[Argued October 16; decided November 27, 1893.]

## RE FISHER'S ESTATE.[1]

### KOEHLER v. McCAMANT.

[S. C. 34 Pac. Rep. 1024.]

1. CHATTEL MORTGAGES — CHANGE OF POSSESSION.— A mortgage of a stock of goods was filed as soon as made, and the mortgagees' agents, who occupied the other side of the same building as the mortgagor, took possession, and put in charge a man who hired the mortgagor to help him, as clerk. New books were opened, and all moneys received, after payment of running expenses, were applied on the mortgage debt. The mortgagor's name on the window was not erased. *Held*, that there was a change of possession, as against subsequently attaching creditors.[2]

2. CHATTEL MORTGAGES — DESCRIPTION.— The return of the mortgagor's assignee, to whom the stock of mortgaged goods was turned over by consent, showing that he sold more articles of some kinds than were described in the mortgage, does not show that the description in the mortgage was inadequate as against subsequently attaching creditors, there being no averment or proof that the mortgagor had any goods other than those described in the mortgage.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

The object of this proceeding is to determine the order in which the proceeds of the sale of certain property, made under an assignment for the benefit of creditors, shall be distributed. The facts, in substance, are that on the twenty-eighth day of May, eighteen hundred and ninety-one, B. W. Fisher, a music dealer of Portland, being indebted to Koehler & Chase, music dealers in San Francisco, made a promissory note, payable to their order on demand, and, to secure the payment of the same, executed and delivered a chattel mortgage on the stock

---

[1] This case is republished with a valuable note on the subject of change of possession of mortgaged property in 38 Central Law Journal, 79.— RE-PORTER.

[2] See the case of *Pierce* v. *Kelly, post*, for a discussion of this same question.— REPORTER.

of goods in his store, and the same was immediately filed in the proper office; that Winter & Harper, as the agents of Koehler & Chase in these transactions, on the same day took possession of the store and said stock of goods and put Mr. W. S. Geary in charge. On the first day of June, eighteen hundred and ninety-one, the said B. W. Fisher made to the order of Wallace McCamant a demand promissory note for the sum of five hundred dollars, upon which, on the second day thereafter, he began an action, and at the same time sued out a writ of attachment and delivered the same to the sheriff, who attached the said stock of goods and took it into his possession. Subsequently, but on the same day, J. H. Robbins brought an action against the said B. W. Fisher on two promissory notes for four hundred dollars and three hundred dollars, respectively, given by Fisher to him, and sued out a writ of attachment, under which the sheriff again attached the same stock of goods. Immediately thereafter Koehler & Chase placed a copy of their mortgage in the hands of the sheriff with instructions to foreclose it. McCamant and Robbins recovered judgment in their respective actions, and shortly thereafter Fisher made a general assignment for the benefit of his creditors. Thereupon the parties entered into a stipulation that the assignee should take possession of and sell the said stock of goods, and return the proceeds thereof into court, which being done, the assignee reported to the court that he was unable to determine the order of distribution of such proceeds, and prayed that the claimants should be required to come before the court, and have their priorities settled and determined. Upon the court so ordering, McCamant and Robbins answered separately, alleging that the mortgage was fraudulent and void as against their respective claims; that it covered different property from that sold by the assignee; that possession

XXV. OR.—5.

was not taken under it, and that the liens acquired by each of said attachments were the first liens on the property sold, and entitled to be first paid out of the proceeds of the sale.

Upon issue being joined, the matter was referred to Francis S. Chamberlain, Esq., as referee, and who found, in effect, that the mortgage was valid and a first lien on the property, which finding the court sustained, and rendered a decree in accordance therewith. Wherefore this appeal by McCamant and Robbins.        AFFIRMED.

*Messrs. Wallace McCamant and Harrison G. Platt* ( *Messrs. Geo. H. Durham* and *Zera Snow* on the brief), for Appellants.

*Mr. Frederick R. Strong*, for Respondents.

Opinion by MR. CHIEF JUSTICE LORD. .

The appellants contend that there was no such change in the possession of the property as the law contemplates, and, as a consequence, that the mortgage was not valid against attaching creditors. It is shown by the evidence that Fisher occupied with his stock of goods, one side, and Winter & Harper with their stock of goods, the other side, of the same store building; that Fisher, as already stated, gave to Koehler & Chase the chattel mortgage in question, prepared in the common form, and that the same was immediately filed. Upon the assumption, probably, that the retention of the stock of goods by the mortgagor might induce other creditors to raise some question as to the validity of the mortgage, Winter & Harper, as agents of Koehler & Chase, took possession of the said goods, and put Mr. Geary in charge, who hired Fisher to assist him as clerk. New books were opened, in which to keep an account of the business, and all

moneys received on sales (no credit being given) were applied to the indebtedness of Koehler & Chase, except such amount as was applied in payment of necessary running expenses. The stock was not replenished, except perhaps, by the purchase of a few strings, and the receipt of some few goods which had been ordered prior to the date of the mortgage. As a business sign, Fisher's name was lettered on the window, which was not erased therefrom when he delivered the possession of his stock of goods to the agents of Koehler & Chase.

The fact that Fisher served as clerk after Mr. Geary was put in possession of, and assumed control over, the goods and business, under these circumstances, is relied upon to show that there was no actual change of possession. There are cases, without doubt, which hold that it is not generally competent for a mortgagee to leave the goods mortgaged in the possession of the mortgagor as his agent, or to make the clerk of the mortgagor his agent to sell them, without any announcement or sign of a change of ownership, as the cases cited by counsel indicate: *Steele* v. *Benham*, 84 N. Y. 634; *Doyle* v. *Stevens*, 4 Mich. 87. These cases consider that possession under such circumstances is merely constructive or legal, and does not import that actual change of possession which the statute contemplates. The relevancy of this principle depends upon the facts to which it is to be applied. We may premise that it is not necessary that the mortgaged goods must be delivered to the mortgagee in person, but that delivery to a third party as his agent is equally effective as constituting an actual change of possession. In the case at bar, neither the mortgagor nor his clerk was left in the possession of the goods as agent for the mortgagees, but a third party, as their agent, took possession of such goods, and remained in the continued possession of the same until ousted by the sheriff under the attachment proceed-

ings. There is a marked difference, as indicating a change in the possession of the property, between a mortgagee, or a third party as his agent, taking possession of mortgaged goods, and such mortgagee leaving the same in the possession of the mortgagor or his clerk as such agent. In the nature of things, when there has been delivery of the mortgaged goods, and an acceptance of them by a third party as such agent, his possession, so long as it continues, is actual and exclusive for the mortgagee. Nor is it necessary that there should be any removal of the goods to indicate such change of possession; for the taking possession and assuming control over the property by such agent is an outward act, or visible sign, of actual change of possession. Hence the possession of Mr. Geary as agent of Koehler & Chase was not constructive or legal, but imported an actual change of possession. This being so, the mere fact that the mortgagor, Fisher, was employed as clerk, did not oust the mortgagees of their possession, or operate to restore the possession to the mortgagor. For, certainly, if they were in possession, or Mr. Geary as their agent, the fact of his employment is not an *indicium* of ownership, and does not constitute such a concurrent possession as the law condemns. In such case his employment in the capacity of a clerk indicates the changed relation he occupies to the property.

The case of *Wilcox* v. *Jackson*, 7 Colo. 525, 4 Pac. Rep. 966, replied upon, is not in conflict with this principle, upon its face. There the mortgagee, not intending to devote his time to the business, placed in charge a clerk of the firm that gave the chattel mortgage, and he remained in possession and assumed control over the goods and business, so that his appearance indicated no change. If the mortgagee himself had taken charge of the goods and business, or by some third party as his agent, the change in the possession would have been visible and

accompanied with the usual *indicia* of ownership, although
he might have employed a clerk of the firm to assist him
in the management of the business.    But here Mr. Geary
was openly placed in charge, and carried on the busi-
ness, which he could not do without causing a visible
change in the possession of the property.    His appear-
ance in the store and in the management of the concern,
under such circumstances, indicated that the goods had
changed hands,— that there was an actual and visible
change of the possession, such as would apprise the com-
munity or the creditors of the mortgagor of such change.
We do not think, therefore, the fact that the mortgagor
was employed as clerk in the store, notwithstanding the
omission to erase his name from the window,— which the
evidence indicates was an oversight,— can be taken as
conclusive evidence of fraud, or justify us in finding
fraud, when the *bona fides* of the indebtedness is unques-
tioned, when the chattel mortgage was regular in form
and duly filed in the proper office before either appel-
lant took any steps to reduce his claim to a judgment,
and prior to Mr. McCamant obtaining his note, and when
the possession taken and maintained was open and actual,
and in our judgment, sufficient to give notice to all con-
cerned.

2.    The next contention is, that the description of the
property in the mortgage is insufficient in law, as against
the attaching creditors.    This objection is based on the
suggestion that the return of the assignee shows that he
sold more articles of some of the kinds described than
the inventory specified.    But there is no evidence to sus-
tain such suggestion.    The mortgage undertakes to cover
all the goods in the store, and to enumerate them in the
inventory attached.    It may be true that there were some
articles of the stock omitted by mistake from the inven-
tory, and to that extent, if we assume the return to be

correct and to differ from such inventory, there would be a discrepancy between the return and the articles mentioned in such inventory. But, if this were so in fact, there is no evidence of it. The mortgagees took possession of the store and the goods contained therein, which the mortgage purports to cover, and all the various articles of which it described by enumeration. The assignee sold the stock, and returned the proceeds into court for distribution. The evidence shows that the stock of goods he sold is the stock mortgaged, and there is no evidence to show there was any discrepancy, or that the mortgagee had any other goods in the store than those specified in the mortgage. If there was, the report of the assignee, or his inventory, should have been submitted in evidence and shown to be correct. Without such showing, we cannot assume his inventory is absolutely correct, or consider it for the purposes suggested. He is as liable to make mistakes as were the parties who made the inventory attached to the chattel mortgage. The necessity, therefore, for the proof of the facts upon which the suggestion is based, is too obvious for any further comment. There is no evidence, nor is there any claim that Fisher had other property than the goods in the store and in controversy. We conclude, therefore, that the goods described in the mortgage was the same stock of goods which the mortgagee took possession of, and which the assignee sold.

From these views, it results that the decree must be affirmed.                                        AFFIRMED.